# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cv-421-JDR-CDL

ISAIAH HASAN GILBERT,

*Petitioner,*

*versus*

SCOTT TINSLEY, *Interim Warden*,[1]

*Respondent.*

## OPINION AND ORDER

Petitioner Isaiah Hasan Gilbert, an Oklahoma prisoner appearing pro se, seeks federal habeas relief under 28 U.S.C. § 2254 asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2010-2165. Dkt. 1. Mr. Gilbert raises seven grounds for relief. *See id.* at 5-12, 18-39.[2] Respondent Scott Tinsley  moves to dismiss the petition, asserting that all claims are barred by the applicable one-year statute of limitations in 28 U.S.C. § 2244(d). Dkts. 10, 11. The Court considered Mr. Gilbert's petition and brief in support [Dkt. 1], Respondent's motion and brief in support [Dkts. 10, 11], the record of state court proceedings provided by Respondent [Dkts. 14, 16],

---

[1] Mr. Gilbert is incarcerated at Dick Conner Correctional Center, and Scott Tinsley is the Interim Warden of that facility. The Court therefore substitutes Scott Tinsley, Interim Warden, in place of Randy Harding as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts.* The Clerk of Court shall note on the record this substitution.

[2] The Court's citations refer to the CM/ECF header pagination.

No. 24-cv-421

Mr. Gilbert's response [Dkt. 17] and applicable law. For the following reasons, the motion to dismiss [Dkt. 10] is granted.

I

The charges underlying Mr. Gilbert's criminal judgment stem from the murder of Kenneth Daniels at the Wedgewood Apartments in Tulsa, Oklahoma, on May 17, 2010. Dkt. 14-3 at 189, 259; Dkt. 14-4 at 127. At trial, three witnesses who were at the apartment complex where the shooting took place testified. Jeremy Thomas  testified that earlier in the evening, Mr. Gilbert was in Apartment 6 where individuals were playing dice, and Mr. Gilbert asked Mark for $20. Dkt. 14-4 at 70, 85. Later in the evening, Mr. Thomas went to the parking lot to wait for a ride. *Id.* at 51. Mr. Thomas witnessed Mr. Gilbert approach Victoria Reed's car. *Id.* at 53-54. Mr. Gilbert, wearing a black hoodie, approached Mr. Thomas. *Id.* at 54. Mr. Gilbert demanded Mr. Thomas's gun, and a "tussle" ensued. *See id.* at 55-57. Mr. Gilbert was armed with a chrome, semi-automatic firearm. *Id.* at 56. Mr. Thomas let go of both guns and watched Mr. Gilbert go back upstairs near Apartment 6. *Id.* at 57-59. Mr. Thomas then got into Victoria Reed's vehicle. *Id.* 60. Mr. Thomas testified he heard Mr. Gilbert say "shoot at 'em" when he was back upstairs. *Id.* Mr. Thomas then called his brother, Kenneth Daniels, to warn him of the individuals with the guns. *See id.* at 61-62. Mr. Thomas heard gunshot sounds on the other end of the phone. *Id.* at 62-63.

Victoria Reed testified she arrived at an apartment complex at 61st and Peoria sometime between 11:00 p.m. and midnight. Dkt. 14-4 at 28. She observed Mr. Thomas in the parking lot talking to a group of girls. *Id.* at 29-30. Ms. Reed also saw Mr. Gilbert standing on the balcony near Apartment 4. *See id.* at 30-31. Ms. Reed called out to Mr. Gilbert, and he came down to the parking lot and spoke to Ms. Reed at her car. *Id.* at 32. Ms. Reed spoke to Mr. Gilbert for about a minute. *Id.* at 33. Mr. Gilbert then walked away and was near Mr. Thomas. *Id.* at 34. Ms. Reed observed Mr. Gilbert and Mr. Thomas "russling and tussling, like wrestling." *Id.* at 35. Ms. Reed testified that she

No. 24-cv-421

did not see Mr. Gilbert go back upstairs (*id.* at 36) and that Mr. Gilbert was wearing a black hoodie. *Id.* Ms. Reed left with Mr. Thomas after she saw Mr. Gilbert walk away from Mr. Thomas. *See id.* at 38. While in her car, Mr. Thomas made a phone call. *Id.*

Mica Cordell was inside Apartment 6 at the time of the shooting. Dkt. 14-4 at 94. Ms. Cordell testified that at around 11:45 p.m., there was a knock on the front door. *Id.* at 96. The victim answered the door and was holding a gun in his right hand. *Id.* at 97. After the man with the gun, who got shot, unlocked the front door, Ms. Cordell heard "pow, pow, pow, gunshots." *Id.* Ms. Cordell looked outside the front door and saw a black man wearing a black hoodie. *Id.* at 97-98. Ms. Cordell was shot in the foot during the incident. *Id.* at 99.

The jury also heard Mr. Gilbert's interview with Detective Vic Regalado shortly after the shooting and Mr. Gilbert's phone calls from jail with his mother. *See* Dkt. 16, State's Exs. 161 and 162.

On June 23, 2011, a Tulsa County jury found Mr. Gilbert guilty of first-degree murder (Count 1), shooting with intent to kill after former conviction of a felony (Count 2), possession of a firearm after former conviction of a felony (Count 3) and robbery with a firearm after former conviction of a felony (Count 4). Dkt. 11-1 at 2, 11; Dkt. 11-2. On July 18, 2011, Mr. Gilbert was sentenced to consecutive terms of life imprisonment on Count 1, twenty years' imprisonment on Count 2, and five years' imprisonment on each of Counts 3 and 4. Dkt. 11-1 at 14.

Mr. Gilbert appealed, and, on January 7, 2013, the Oklahoma Court of Criminal Appeals affirmed Mr. Gilbert's convictions and sentences. Dkt. 11-2. Nearly ten years later, on October 28, 2022, Mr. Gilbert applied for postconviction relief. Dkts. 11-3, 11-4. The state district court dismissed Mr. Gilbert's application on November 30, 2023. Dkt. 11-7. Mr. Gilbert appealed,

No. 24-cv-421

and the OCCA affirmed the denial of his application on March 29, 2024. Dkt. 11-9.

Mr. Gilbert filed this petition on September 5, 2024. Dkt. 1.[3] Respondent moves to dismiss the petition as barred by the applicable one-year statute of limitations. Dkts. 10, 11.

## II

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state prisoners have one year from the latest of four triggering events in which to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). These events include:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; [and]

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[3] Mr. Gilbert's petition was received by the Clerk of Court on September 9, 2024. Dkt. 1 at 1. However, because there is evidence showing he placed the petition in the prison's legal mail system on September 5, 2024, the Court deems the petition filed September 5, 2024. Dkt. 1 at 54, *see* Rule 3(d), *Rules Governing Section 2254 Cases in the United States District Courts.*

No. 24-cv-421

28 U.S.C. § 2244(d)(1)(A)-(D). The one-year limitations period generally runs from the date the judgment became "final" under § 2244(d)(1)(A), unless a petitioner alleges facts that implicate § 2244(d)(1)(B), (C), or (D). *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).

Regardless of which provision governs the commencement date, a state prisoner's one-year limitation period is tolled for "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Federal courts may also toll the limitations period for equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), and may excuse noncompliance with the statute of limitations if the petitioner asserts a credible claim of actual innocence, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

Critical to the petition here, Mr. Gilbert submits affidavits dated July 11, 2021, July 28, 2021, June 1, 2021, June 22, 2021, June 28, 2022, and June 29, 2022. Dkt. 1 at 40-45. He alleges these affidavits constitute "a credible showing of actual innocence based on 'newly presented evidence[.]'" *Id.* at 15-16.

Respondent contends Mr. Gilbert's petition is time-barred. Dkts. 10 and 11. Specifically, Respondent argues: (1) Mr. Gilbert's petition is untimely pursuant to 28 U.S.C. § 2244(d)(1)(A); (2) to the extent Mr. Gilbert is availing himself to 28 U.S.C. § 2244(d)(1)(D), based upon the affidavits, the petition is still untimely; (3) Mr. Gilbert is not entitled to equitable tolling; and (4) Mr. Gilbert does not satisfy the actual innocence gateway. *See* Dkt. 11. The Court agrees.[4]

---

[4] Respondent also moves to dismiss Mr. Gilbert's claims as unexhausted. Dkt. 12. Since the Court determines the petition is untimely, it does not address the merits of Respondent's exhaustion motion to dismiss.

No. 24-cv-421

A

Mr. Gilbert failed to initiate this petition within the time mandated by 28 U.S.C. § 2244(d)(1)(A). Under § 2244(d)(1)(A), the limitations period is statutorily tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). This statutory tolling provision, however, does not apply to applications for state postconviction or other collateral review filed beyond the one-year limitations period prescribed by the AEDPA. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by the AEDPA will toll the statute of limitations."); *Anderson v. Cline*, 397 F. App'x 463, 464 (10th Cir. 2010)[5] ("[I]t is long settled that a state court motion for collateral relief cannot restart the clock on a limitations period that has already expired.").

As outlined above, Mr. Gilbert's convictions and sentences were affirmed by the OCCA on January 7, 2013. Dkt. 11-2. Mr. Gilbert did not seek a writ of certiorari from the United States Supreme Court within ninety days after the OCCA affirmed his convictions. Sup. Ct. R. 13. Therefore, Mr. Gilbert's criminal judgment became final on April 7, 2013, ninety days after January 7, 2013. *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) ("[P]etitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until—following a decision by the state court of last resort—after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed." (internal citations and quotations omitted)). Mr. Gilbert's one-year period to file a petition for writ of habeas corpus began April 8, 2013.

---

[5] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

No. 24-cv-421

Mr. Gilbert did not file his application for post-conviction relief until October 28, 2022. Dkts. 11-3 and 11-4. Therefore, this application did not provide any statutory tolling. *Clark*, 468 F.3d at 714. Accordingly, Mr. Gilbert's September 5, 2024 petition, filed well beyond the April 8, 2013 deadline, is untimely under 28 U.S.C. § 2244(d)(1)(A).

B

Although Mr. Gilbert does not explicitly allege his petition is timely under 28 U.S.C. § 2244(d)(1)(D), the Court liberally construes his petition as implicating § 2244(d)(1)(D). *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "By its plain language, § 2244(d)(1)(D) is directed to when the factual predicate of a petitioner's claim or claims could have been discovered through the exercise of due diligence." *Resinger v. Farris*, 804 F. App'x 1001, 1002 n.2 (10th Cir. 2020). "A factual predicate constitutes the vital facts underlying those claims." *Purkey v. Kansas*, 281 F. App'x 824, 827 (10th Cir. 2008)(quotation omitted). Furthermore, trigger dates under § 2244(d)(1)(D) require a "claim-by-claim consideration." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005).

Mr. Gilbert advances the following claims:

1. Denial of his 6th and 14th Amendment rights to counsel and due process resulted in Mr. Gilbert being convicted of crimes of which he is actually innocent;

2. Mr. Gilbert's conviction is void because he was denied due process;

3. The state courts exceeded their jurisdiction by failing to abide by their own precedent;

4. Mr. Gilbert's 6th Amendment right to fair trial was violated when Detective Vic Regalado invaded the province of the jury by making a determination of guilt for or on behalf of the jury;

5. Mr. Gilbert's warrantless arrest was in violation of his 4th Amendment rights;

7

No. 24-cv-421

6.    Mr. Gilbert's trial counsel was constitutionally ineffective; and

7.    Mr. Gilbert's appellate counsel was constitutionally ineffective.

*See* Dkt. 1 at 5, 7, 9, 12, 18-30. The Court understands Mr. Gilbert's claims for habeas relief as arising from the following events: the twenty-seven-day period between the time Mr. Gilbert was arrested and his first court appearance; his alleged warrantless arrest; a video of his interview with Detective Vic Regalado being shown to the jury wherein Detective Regaldo states, "I know you did it."; and his appellate and trial counsel ineffectiveness for failing to raise these errors along with his trial counsel's failure to properly investigate. *See id.* at 18-39.

Mr. Gilbert now provides the Court with six affidavits to support his petition. *See id.* at 40-45. Cordero Barber states he was present at the Wedgewood Apartments on May 17, 2010, he spoke to Mr. Gilbert who was wearing his CheeZies Pizza work uniform, they smoked marijuana together, and Mr. Gilbert left the apartment complex before the shooting. *Id.* at 40. Mr. Barber states he did not provide this information sooner "due to all the gang violence in that neighborhood, I did not feel safe coming forward at that time [and he] was unaware [Mr. Gilbert] was convicted for this crime until recently." *Id.*

Juanita Nichols states that at the time of the shooting she was dating Mr. Gilbert's brother, Hasim Howard, and they lived together. Dkt. 1 at 41. On the evening of May 17, 2010, Mr. Gilbert and Mr. Howard arrived at Ms. Nichols's apartment around 11:30 p.m. and were at her apartment "the whole night." *Id.*

Mr. Howard states he picked up Mr. Gilbert from his job at CheeZie's Pizza around 11:15 p.m. the evening of May 17, 2010. Dkt. 1 at 42. Mr. Howard and Mr. Gilbert then drove to Mr. Howard's place of residence and "remained there for the entire night. We did not leave until the next morning when I had to take my brother to work." *Id.* Both Ms. Nichols and Mr.

No. 24-cv-421

Howard state they were not questioned by detectives, nor were they called by
Mr. Gilbert's attorney, but they made themselves available to both. *See id.* at
41-42.

Mr. Thomas provided an affidavit recanting his trial testimony. Dkt. 1
at 43. He states he cannot identify the person speaking to Ms. Reed in the
parking lot as Mr. Gilbert. *Id.* Further, Mr. Thomas "was not robbed for a
firearm that evening." *Id.* He states, "[a]t the time of the incident, I was young
I felt pressured by detectives Jeff Felton and Vic Regalado to name Isaiah
Gilbert as a suspect. They showed me his prior convictions and stated to me
'this is the suspect' several times and I believed them." *Id.*

Kadrian Daniels, Kenneth Daniels's brother, provides an affidavit
stating he was in the apartment where the shooting took place on May 17,
2010. Dkt. 1 at 44. Kadrian Daniels states when the knock at the door was
answered, he "saw a short man dressed in black at the door and he began
shooting[.]" *Id.* He further states, "my brother Jeremy Thomas was never in
a physical altercation with anyone. He was not beaten up or robbed that night.
I did not see my little brother with a firearm that evening." *Id.* Kadrian
Daniels also states Mr. Gilbert "was not present that night at the apartment
at any point." *Id.*

Finally, Roshinique Jones provides an affidavit stating she was at the
apartment complex the evening of May 17, 2010. Dkt. 1 at 45. She states she
saw Mr. Gilbert wearing a red CheeZies Pizza uniform shirt, she never saw
Mr. Gilbert with a gun, nor did she see Mr. Gilbert get into an altercation with
anyone including Mr. Thomas that night. *Id.* Finally, she saw Mr. Gilbert
leave before "any of the events of the night transpired," and Mr. Thomas got
into the car and left with Ms. Reed after Mr. Gilbert left. *Id.*

To the extent Mr. Gilbert argues, for purposes of 28 U.S.C. §
2244(d)(1)(D), that these affidavits provide a different trigger date for any of
these claims, this position fails for several reasons.

No. 24-cv-421

1

First, the information in the affidavits was discoverable by Mr. Gilbert well before 2021 and 2022. The Tenth Circuit decision in *Craft v. Jones*, 435 F. App'x 789 (10th Cir. 2011) is instructive. In *Craft*, the petitioner claimed that the date he obtained new evidence in the form of an affidavit from Joshua Grams provided a later trigger date under 28 U.S.C. § 2244(d)(1)(D). "Grams, a fellow prisoner, claimed to have been present during the stabbing for which Craft was convicted. According to Grams, Craft committed the stabbing in self-defense after wresting the knife away from his would-be attacker." *Id.* The Tenth Circuit noted,

> If as Grams claims, he was present during the stabbing, then Craft would have been aware that Grams was a witness to the event. Thus, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" was not June 13, 2009, the date of the affidavit, but instead July 14, 2004, the date of the stabbing. Craft was aware that Grams witnessed the stabbing, yet nothing in the record or briefing suggests that Craft exercised "due diligence" in attempting to obtain the testimony of Grams prior to June 2009, five years after the events in question.

*Id.* Similarly, five of the six affiants claim to have seen or interacted with Mr. Gilbert the evening of May 17, 2010. *See* Dkt. 1 at 40-43, 45. If the facts are as Mr. Barber, Ms. Nichols, Mr. Howard, Mr. Thomas, and Ms. Jones claim, Mr. Gilbert was aware that these individuals were alibi witnesses for him in 2010. Accordingly, to the extent Mr. Gilbert contends that the date Mr. Barber, Ms. Nichols, Mr. Howard, Mr. Thomas, and Ms. Jones signed their affidavits provides a new trigger date under 28 U.S.C. § 2244(d)(1)(D), this position fails.

2

Second, Kadrian Daniels's affidavit does not provide the vital facts of any of Mr. Gilbert's claims. This affidavit states that Mr. Gilbert was not in

No. 24-cv-421

the apartment where the shooting took place the evening of May 17, 2010. *See* Dkt. 1 at 44.

Grounds One[6] and Three, and a portion of Ground Two, are premised upon the twenty-seven-day delay between the time Mr. Gilbert was arrested and his first court appearance. *See id.* at 19, 23, 28-29, 35. Ground Five and a portion of Ground Two are based upon Mr. Gilbert's allegedly warrantless arrest. *See id.* at 24-25, 33. Ground Four is premised upon the video of Mr. Gilbert's interview with Detective Regalado shown to the jury. Kadrian Daniels's affidavit does not contain any information related to Mr. Gilbert's initial detention, his arrest, or his interview with Detective Regalado. *See id.* at 44. Therefore, Kadrian Daniels's affidavit does not contain any "vital facts" underlying Grounds One, Two, Three, Four or Five.

3

Third, the affidavits do not advance Mr. Gilbert's argument that §2244(d)(1)(D) provides a later commencement date for his ineffective assistance of counsel claims.

A

Concerning Ground Six, Mr. Gilbert alleges his trial counsel was ineffective for three reasons: (1) failing to file a motion to dismiss based upon denial of due process and right to counsel when he was held twenty-seven days before his first court appearance; (2) failing to interview and investigate eyewitnesses Ms. Jones and Santiece Doyle; and (3) failing to present Ms. Nichols and Mr. Howard as alibi witnesses. Dkt. 1 at 35-37.

While some of the affidavits submitted do contain facts to support this claim of ineffective assistance of counsel (*see* Dkt. 1 at 41, 42, 43 and 45), none

---

[6] To the extent Mr. Gilbert is asserting a free-standing actual innocence claim under Ground One [Dkt. 1 at 5-6], with or without consideration of the affidavits, a freestanding claim of actual innocence based on newly discovered evidence is not a cognizable basis for federal habeas relief. *Boyd v. Martin,* 747 F. App'x 712, 715 (10th Cir. 2018).

No. 24-cv-421

of these affidavits contain facts which Mr. Gilbert could not have discovered earlier through the exercise of due diligence. Turning to Mr. Gilbert's first contention that his trial counsel failed to file a motion to dismiss based upon unconstitutional detention, this vital fact was known to Mr. Gilbert at the latest on June 20, 2011, when his jury trial began.

Concerning his trial counsel's failure to investigate eyewitnesses, Mr. Gilbert alleges:

> Trial counsels were also ineffective for failure to interview and investigate eyewitnesses Roshinique Jones and Santiece Doyle. At preliminary hearing state[']s witness Jeremy Thomas testified that he was in the parking lot talking to Roshinique, Santiece, and some other females. Jeremy Thomas clearly placed Roshinique and Santiece at the scene, thereby indicating that both females had firsthand knowledge concerning Petitioner's guilt or innocence. Hence counsel had a duty to investigate Roshinique and Santiece.

Dkt. 1 at 35-36. As recognized by Mr. Gilbert, Ms. Jones and Ms. Doyle were placed at the scene by Mr. Thomas as early as the preliminary hearing on July 28, 2010. *See* Dkt. 14-1 at 38. Mr. Gilbert was present for the preliminary hearing. *Id.* at 3. Therefore, Mr. Gilbert was aware of these potential eyewitnesses as early as July 28, 2010. Mr. Gilbert was also aware by his jury trial in June of 2011 that his defense counsel did not present any information from Ms. Jones or Ms. Doyle to the jury in his defense. Mr. Gilbert, through the exercise of due diligence, could have discovered the vital facts supporting his ineffective assistance of trial counsel claim by the end of the jury trial, at the latest.

As to his final claim of ineffective assistance of trial counsel, Ms. Nichols and Mr. Howard state that Mr. Gilbert was with them at Ms. Nichols's apartment the night of the shooting. Dkt. 1 at 41-42. As noted above, if this is true, Mr. Gilbert knew as early as May 17, 2010, that he was with these individuals and had additional alibi witnesses. He also knew by the

No. 24-cv-421

end of his jury trial that his trial counsel did not present these alibi witnesses to the jury. Therefore, the affidavits do not provide an alternate trigger date for his ineffective assistance of trial counsel claim, Ground Six, under 28 U.S.C. § 2244(d)(1)(D).

B

Finally, Mr. Gilbert alleges that his appellate counsel was ineffective because: (1) he failed to raise on direct appeal the denial of counsel and due process violation claims premised upon the twenty-seven-day delay between Mr. Gilbert's arrest and his first court appearance; (2) he failed to raise ineffective assistance of trial counsel on direct appeal; and (3) failed to raise Grounds One through Six on direct appeal. *See* Dkt. 1 at 38-39. As explained above, Mr. Gilbert was aware of the factual predicates underlying Grounds One through Six by the end of his jury trial in 2011. *See supra*. Additionally, the OCCA issued its summary opinion affirming his convictions on January 7, 2013. Dkt 11-2. Mr. Gilbert does not contend he was unaware of the contents of his direct appeal or the OCCA's adjudication of the same.[7] Nor does he allege he could not timely discover the same through the exercise of due diligence. Finally, the affidavits submitted have no bearing on his ineffective assistance of appellate counsel claim. Thus, Mr. Gilbert was aware by, at the latest, 2013 that his appellate counsel did not raise the identified claims on direct appeal. Therefore, the affidavits do not provide an alternate trigger date for his ineffective assistance of appellate counsel claim, Ground Seven, under 28 U.S.C. § 2244(d)(1)(D).

4

As thoroughly outlined above, the submitted affidavits do not provide an alternate trigger date pursuant to 28 U.S.C. § 2244(d)(1)(D) for any of Mr.

---

[7] The OCCA allowed Mr. Gilbert to file a pro se supplemental brief in support of his direct appeal. *See* Dkt. 11-2 at 1 n.2. Mr. Gilbert's filing of a pro se supplement indicates he was aware of the contents of his direct appeal at the time of its filing.

No. 24-cv-421

Gilbert's seven claims. For the reasons articulated, Mr. Gilbert's petition is time barred.[8]

### III

To the extent Mr. Gilbert seeks equitable tolling, he has not shown any basis for the Court to equitably extend the limitations period. While the one-year statute of limitations may be subject to equitable tolling, equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Moreover, Mr. Gilbert's "burden in making this demonstration is a heavy one: [federal courts] will apply equitable tolling only if he is able to show specific facts to support his claim or extraordinary circumstances and due diligence." *Vigil v. Jones*, 302 F. App'x 801, 804 (10th Cir. 2008) (internal quotations omitted) (quoting *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008)). Mr. Gilbert's petition does not indicate that any extraordinary circumstances precluded the timely submission of his action. Accordingly, equitable tolling is unavailable to Mr. Gilbert.

### IV

Finally, Mr. Gilbert contends that the one-year statute of limitations does not bar his petition because he "has made a credible showing of actual innocence based on 'newly presented evidence[.]'" Dkt. 1 at 16. The submitted affidavits are the "newly presented evidence" Mr. Gilbert relies upon. *See id.* at 40-45. Respondent contends that the affidavits are not reliable and, even considering the affidavits, that a jury still would have convicted Mr. Gilbert. *See* Dkt. 11 at 20-27. The Court agrees Mr. Gilbert has failed to satisfy the actual innocence gateway.

---

[8] Mr. Gilbert did not allege any facts triggering 28 U.S.C. §§ 2244(d)(1)(B) or (C). Therefore, the Court does not analyze these subsections.

No. 24-cv-421

A

First, Mr. Gilbert failed to rebut the presumption of correctness of the
state courts' factual findings. 28 U.S.C. § 2254(e)(1). Mr. Gilbert presented
these affidavits to the state district court in his application for post-conviction
relief. *See* Dkt. 11-4 at 115-120. The state district court considered Mr.
Gilbert's affidavits and explained,

> [C]ontrary to Petitioner's claims that the affiants' present
> statements would have changed the trial, the State provided
> ample evidence placing Petitioner at the crime scene including
> Petitioner's own recorded interview. Petitioner knew of
> Victoria Reed being a witness without the detectives ever
> mentioning Victoria Reed's name. (Tr. IV 748). Before the
> detectives mentioned there being a scuffle or fight, Petitioner
> mentioned it in the interview. Additionally, Jeremy Thomas's
> testimony was corroborated by Victoria Reed's testimony that
> she saw Petitioner at the location of the crime mere minutes
> before the shooting. Despite the dark and being unable to make
> out the details, Victoria Reed stated she saw Petitioner and
> Jeremy Thomas were "russling and tussling" in the parking lot.
> (Tr. III 425). Finally, Victoria Reed and Jeremy Thomas
> testified to the Petitioner wearing a black hoodie on the night of
> the murder, and Mica Cordell testified to the gunman wearing
> a black hoodie.

Dkt. 11-7 at 5-6. The state district court further held, "[n]one of the
information Petitioner presents rises to the level of being material to the point
where another trial would result in acquittal of him. He has wholly failed to
show so other than conclusively alleging that a miscarriage of justice has
resulted." *Id.* at 6. The state district court rejected Mr. Gilbert's actual
innocence claim. *Id.* The OCCA affirmed the state district court's order
dismissing Mr. Gilbert's application for post-conviction relief. Dkt. 11-9 at 3.
Mr. Gilbert has failed to carry his burden of rebutting the presumption of
correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

No. 24-cv-421

B

Second, even looking past Mr. Gilbert's failure to rebut the presumption of correctness, Mr. Gilbert has not satisfied the requirements of the actual innocence gateway.

Successful actual-innocence claims are rare due to the demanding evidentiary requirements for such claims. *McQuiggin*, 569 U.S. at 386 and 401; *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); accord *McQuiggin*, 569 U.S. at 399 (applying the same standard to petitions asserting actual innocence as a gateway to raise habeas claims that are time-barred under § 2244(d)(1)). "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, *trustworthy* eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Fontenot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) (emphasis added) (quoting *Schlup*, 513 U.S. at 324). "If the evidence is new and reliable, then the habeas court should evaluate the petitioner's claim by considering all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Blacklock v. Schnurr,* No. 24-3125, 2024 WL 4880569, at *5 (10th Cir. Nov. 25, 2024) (unpublished) (internal citations and quotations omitted).

Mr. Gilbert has not presented new *reliable* evidence. Part of Mr. Gilbert's "new evidence" is Mr. Thomas's affidavit recanting his trial testimony. Such evidence "is not sufficiently 'reliable' to establish actual innocence." *Ater v. Pettigrew*, 20-CV-1090-G, 2021 WL 5228521, at *8 (W.D. Okla. May 21, 2021), *report and recommendation adopted* 2021 WL 5234557 (W.D. Okla. Nov. 9, 2021). "Recanting testimony has long been disfavored as

No. 24-cv-421

the basis for a claim of innocence. Appellate courts, even on direct review, look upon recantations with extreme suspicion." *Case v. Hatch*, 731 F.3d 1015, 1041-42 (10th Cir. 2013) (internal quotations and citations omitted); *see also United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984) ("recanted testimony is properly viewed with suspicion."). Further, Mr. Thomas's affidavit is suspect because throughout the course of the investigation, preliminary hearing, and trial, Mr. Thomas provided different versions of the evening. *See, e.g.*, Dkt. 14-4 at 73-85. The most recent affidavit is yet another version. Mr. Thomas's affidavit, standing alone, is suspicious.

Furthermore, the timing of the affidavits undermines their reliability. *Schlup*, 513 U.S. at 332 (the Court "may consider how the timing of the submission … bear[s] on the probable reliability of that evidence."). These affidavits were executed at least ten years after the crime. *See* Dkt. 1 at 40-45.

When the affidavits are considered against the other evidence presented at trial, the affidavits have minimal, if any, reliability left which would entitle Mr. Gilbert to relief.

First, even considering the new affidavits, there is sufficient evidence to support the verdicts. Ms. Reed testified she observed Mr. Gilbert on the balcony near Apartment 6, he came down to speak with her while she was in her car, he was wearing a black hoodie, and after speaking with her she saw him get into an altercation with Mr. Thomas. Dkt. 14-4 at 30-36. Ms. Reed remained consistent throughout the proceedings that Mr. Gilbert wore a black hoodie. *See, e.g.*, Dkt. 14-1 at 26-27.[9] Ms. Cordell, one of the victims, testified the shooter was wearing a black hoodie. Dkt. 14-4 at 98.

---

[9] This undermines the credibility of Mr. Barber and Ms. Jones's affidavits over ten years later that Mr. Gilbert was wearing his CheeZie's Pizza uniform. *See* Dkt. 1 at 40, 45. That said, these affidavits are consistent with Gilbert's statements to Detective Regalado that he shot craps with the people in the apartment after work, he was wearing his CheeZie's Pizza uniform, and he did not wear a black hoodie. Dkt. 16, State's Ex. 161 at 16:17:28-16:17:59.

No. 24-cv-421

Furthermore, Mr. Gilbert placed himself at the scene of the crime during an interview with Detective Regalado. Dkt. 16, State's Ex. 161 at 16:10:22-16:15:40. During a phone call from jail, Mr. Gilbert also admitted to his mother that he shot craps with the people in the apartment the night of the shooting. *Id.*, State's Ex. 162 at 5:06-5:15, 9:28-9:53. Mr. Gilbert's own statements contradict Kadrian Daniels's affidavit that Mr. Gilbert was not in the apartment the evening of the shooting. *Compare Id.*, State's Ex. 162 at 5:06-5:15, 9:28-9:53 *with* Dkt. 1 at 44.

Mr. Gilbert now relies upon his brother, Mr. Howard, and his girlfriend, Ms. Nichols, as alibi witnesses that Mr. Howard picked Mr. Gilbert up from work and that Mr. Howard and Mr. Gilbert were at Ms. Nichols' apartment the entire evening. Dkt. 1 at 41-42. However, Ms. Nichols and Mr. Howard's affidavits are contradicted, to some extent, by Mr. Howard's statement to Mr. Gilbert's mother shortly after the crime wherein Mr. Howard denied picking Mr. Gilbert up from work and, instead, communicated to Mr. Gilbert's mother that Mr. Gilbert showed up at Ms. Nichols's apartment sometime later. Dkt. 16, State's Ex. 162 at 1:18-1:43. Mr. Gilbert also told his mother that he had someone take him to Mr. Howard's house after Mr. Gilbert left work. *Id.* State's Ex. 162 at 2:06.

In all, the Court concludes that the affidavits are not reliable. And even if they were considered reliable, the affidavits, when considered with the trial evidence, are insufficient to establish "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

V

The Court finds and concludes that Mr. Gilbert's petition for writ of habeas corpus [Dkt. 1] is time-barred and that Mr. Gilbert has not satisfied the requirements to pass through the actual innocence gateway. The Court therefore dismisses the petition. The Court further concludes that no certificate of appealability shall issue because no reasonable jurists would

No. 24-cv-421

debate the dismissal of the petition on statute-of-limitations grounds. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

VI

Having dismissed Mr. Gilbert's petition as time-barred, the Court denies as moot Respondent's alternative motion to dismiss petition for writ of habeas corpus for failure to exhaust necessary state remedies. Dkt. 12.

Mr. Gilbert requests an evidentiary hearing to resolve genuine disputes of material facts surrounding his actual innocence claim and requests appointment of counsel to assist him with the evidentiary hearing. *See* Dkts. 9, 18. The Court has thoroughly considered the evidence presented at trial and Mr. Gilbert's proffered "new evidence." Having done so, the Court finds that no evidentiary hearing is necessary to evaluate the gateway claim. *See Schlup*, 513 U.S. at 331-32 (noting that, in applying the *Schlup* standard, a court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial" and has the "ability to take testimony from the few key witnesses if it deems that course advisable"); *id.* at 341 (Rehnquist, C.J., dissenting) (noting that "habeas courts will be able to resolve the great majority of 'actual innocence' claims routinely without any evidentiary hearing"). The Court denies as moot Mr. Gilbert's motion for evidentiary hearing. Dkt. 18. Having denied Mr. Gilbert's request for an evidentiary hearing [Dkt. 18], the Court declines to appoint Mr. Gilbert counsel. *Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994) ("[G]enerally appointment of counsel in a § 2254 proceeding is left to the court's discretion."); Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts, ("If an evidentiary hearing is required the judge shall appoint counsel for a petitioner . . . ."). Thus, the Court denies Mr. Gilbert's motion for appointment of counsel.

No. 24-cv-421

## VII

IT IS THEREFORE ORDERED that the motion to dismiss [Dkt. 10] is granted; the petition [Dkt. 1] is dismissed with prejudice as barred by the one-year statute of limitations; a certificate of appealability is denied; and a separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the alternative motion to dismiss [Dkt. 12] is denied as moot.

IT IS FURTHER ORDERED that the motion for evidentiary hearing [Dkt. 18] and motion for appointment of counsel [Dkt. 9] are denied.

IT IS FURTHER ORDERED that the Clerk of the Court shall note on the record the substitution of Scott Tinsley, Interim Warden, in place of Randy Harding as party Respondent.

DATED this 24th day of September 2025.

_____
John D. Russell
*United States District Judge*